# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

GARY X. DORSEY, SR.,                          Case No. 1:18-cv-615
     Plaintiff,                              Cole, J.
                                          Litkovitz, M.J.

     vs.

MEGAN J. BRENNAN, POSTMASTER                  **REPORT AND**
GENERAL, U.S. POSTAL SERVICE,                 **RECOMMENDATION**
     Defendant.

Plaintiff Gary X. Dorsey, Sr., brings this action against defendant Megan Brennan, Postmaster General, United States Postal Service (USPS), alleging disability discrimination, failure to provide reasonable accommodation or enter into the interactive process, and related retaliation under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. (Rehabilitation Act). This matter is before the Court on USPS's motion for summary judgment (Doc. 40) and plaintiff's response (Doc. 57).[1] USPS did not reply. For the following reasons, the Court recommends that USPS's motion be granted in part and denied in part.

## I.     Background

This action concerns two adverse employment actions taken by USPS: (1) USPS's termination of plaintiff's employment as a City Carrier Assistant (CCA), and (2) USPS's failure to hire plaintiff as an Assistant Mail Handler (AMH). The following facts related to each adverse action are undisputed except where noted.

---

[1] Plaintiff's response to the motion for summary judgment includes a section titled "Interference with ADA Rights and Participation" and refers to Seventh Circuit authorities recognizing such a claim. (*See id.* at PAGEID 1806). USPS's motion, however, does not acknowledge this claim and plaintiff's amended complaint (Doc. 5) does not invoke the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* As such, to the extent that this claim is cognizable in the Sixth Circuit, the Court does not consider it for purposes of the pending motion.

A. Termination

Plaintiff worked as a CCA for USPS at the Westwood, Ohio post office station between May and July 2013. During that time, he was a probationary employee.[2] On June 27, 2013, plaintiff fell when a set of steps on a property on his mail delivery route collapsed. According to plaintiff, he injured both knees and his left ankle in the fall. Plaintiff called his Station Manager, Katrina Baker-Calmeise, to report the fall. Station Manager Baker-Calmeise transferred the call to Supervisor Elmer Schmalle, who dispatched Supervisor Viney Smith to the scene to take photos and meet plaintiff. Plaintiff completed his route and met with Supervisor Schmalle at the end of the day. At that meeting, with a union representative present, plaintiff indicated that he would be "okay," and he did not immediately seek medical treatment. (*See* Incident Report, Doc. 36-5 at PAGEID 276). Plaintiff asserts, however, that outside of the union representative's presence, Supervisor Schmalle effectively threatened plaintiff's termination if he decided to report and seek treatment for his injuries. Plaintiff testified:

> Q. At any point did you, during your 60-day employment with the postal service, did you use leave?
> A. No. Elmer told me if I was to report that I was injured to Workman's Comp or anyone that I might as well turn in my bag and my badge, that I would be fired.

(Pl.'s Dep., Doc. 36 at PAGEID 249-50). (*See also* Smith Dep., Doc. 50 at PAGEID 1334[3]).

---

[2] Plaintiff disputes the characterization that he was hired under the job title "Probationary City Carrier Assistant" (*see* Doc. 58-2 at PAGEID 1864) but does not dispute that he was in a probationary period of employment.

[3] Supervisor Smith testified:

> Q. Did you hear any comments by Mr. Schmalle regarding any claim of injury [plaintiff] had?
> A. Yes.
> Q. What did you hear?
> A. Mr. Schmalle told me that he told [plaintiff] concerning an injury that -- and I don't know verbatim, that if it were reported, that he could be fired.

(*Id.*).

On July 3, 2013, a week after the fall and approximately two months into his tenure as a CCA, Station Manager Baker-Calmeise completed a second Employee Evaluation and/or Probationary Report for plaintiff. (Doc. 39-4). The form rates six factors as either outstanding, satisfactory, unsatisfactory, or not observed: work quantity, work quality, dependability, work relations, work methods, and personal conduct. (*Id.*). Prior to plaintiff's fall, he had been rated "unsatisfactory" on the first three factors and "satisfactory" on the last three factors. (*Id.*).[4] Plaintiff went from unsatisfactory on some factors as of June 3, 2013, to unsatisfactory on all factors as of July 3, 2013. (*Id.*). On July 9, 2013, Station Manager Baker-Calmeise met with plaintiff and informed him that he would be terminated. On July 19, 2013, she issued a Notice of Separation dated July 9, 2013, which cited "continued performance issues and [plaintiff's] failure to follow Postal Service Rules and Regulations. . . ." (Doc. 36-4).

On July 10, 2013, plaintiff initiated an injury claim by submitting the Federal Employees Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation form (Form CA-1). (Doc. 39-11). Plaintiff filed a formal EEO complaint related to his termination as a CCA on October 24, 2013. (Doc. 46-1). USPS did not finalize plaintiff's separation until approximately April 2014. (*See* internal USPS emails, Doc. 45-1 at PAGEID 598-603).

B. <u>Non-selection</u>

In late 2015, more than one year after his separation from USPS, plaintiff applied for the AMH position. In his application, plaintiff indicated that he was currently employed as CCA ("04/2013 - Present") and that his "Reason for Wanting to Leave" was "Industrial Accident/Medical[.]" (Doc. 39-17 at PAGEID 447). Plaintiff's application also represented that he had never been fired from a job.

---

[4] Plaintiff disputes the accuracy of this evaluation.

Prior to applying for the AMH position, plaintiff had discussed it with field recruiter Merryl (Lisa) Butts.  Plaintiff communicated to her that he had concerns about returning to USPS and mentioned that "he was not working as a carrier because of his performance as a carrier. . . ." (Butts Dep., Doc. 49 at PAGEID 1197-98).  Once plaintiff submitted the application, Tammy Barnes conducted his interview.  During the interview, plaintiff corrected the misstatements on his application about his current employment status, and Ms. Barnes recommended plaintiff for hire.  On the interview sheet and checklist, however, Ms. Barnes handwrote that her recommendation was conditional "Pending History 2013/14[.]"  (Doc. 39-18).  Ms. Barnes made this notation with the assumption, based on her conversation with plaintiff, "that [plaintiff's] previous boss [would give plaintiff] a good recommendation. . . ."  (Barnes Dep., Doc. 52 at PAGEID 1523; *see also* Barnes Aff., Doc. 46-12 at PAGEID 1017 (explaining that she could not unconditionally recommend plaintiff for hire because his application packet did not include background history and that plaintiff knew that a final decision depended on review of this additional information)).

Following the interview with Ms. Barnes, plaintiff's application was submitted to the USPS division responsible for extending job offers, the Shared Services Center.  On December 16, 2015, Thomas Bunnell conditionally offered plaintiff the AMH position via email.  The offer was conditioned "upon [plaintiff's] meeting medical and security investigation requirements[,]" and the email advised him not to "resign from [his] current job. . . ."  (Doc. 39-20).

The circumstances leading to USPS's decision to rescind the conditional offer are vigorously disputed.  USPS relies on the sworn statements of several employees to establish the following sequence of events.  Operations Support Specialist, Kevin Reynolds, spoke with Supervisor of Customer Service Support, Amy Daugherty, to obtain information about plaintiff.

4

(*See* Reynolds Aff., Doc. 39-22 at PAGEID 476, 478; Daugherty Dep., Doc. 56 at 11:8-13:21[5]).

Ms. Daugherty in turn contacted Station Manager Baker-Calmeise, who informed her that

plaintiff "was not eligible for rehire" based on "poor performance during his probation period."

(Daugherty Dep., Doc. 56 at 13:22-15:2).  Ms. Daugherty relayed this information to Mr.

Reynolds.  (Reynolds Aff., Doc. 39-22 at PAGEID 476, 478; Daugherty Dep., Doc. 56 at 18:2-

9).  Mr. Reynolds contacted Plant Manager David Caproni and asked whether he would be

interested in hiring someone who had been previously terminated, and Mr. Caproni replied that

he was not interested in a hire not recommended by the Customer Service department.

(Reynolds Aff., Doc. 39-22 at PAGEID 478; Caproni Aff., Doc. 39-24 at PAGEID 484, 486).

Mr. Reynolds then relayed Mr. Caproni's assessment to Ms. Butts, who understood plaintiff's

non-selection to be related to plaintiff's prior work history.  (Reynolds Aff., Doc. 39-22 at

PAGEID 478; Butts Dep., Doc. 49 at PAGEID 1164-65).  Plaintiff characterizes the evidence to

support this narrative as self-serving, biased, contradictory, and speculative.  (*See* Doc. 58-2 at

PAGEID 1887-1889).

On December 27, 2015, Ms. Butts notified plaintiff that he had not been selected for the

AMH position.  The formal rescission of plaintiff's conditional offer took place sometime after

March 31, 2016,[6] but neither party identified the exact date.  Plaintiff filed a formal EEO

complaint related to his non-selection on April 18, 2016.  (Doc. 46-10).

On October 15, 2018, plaintiff filed his amended complaint, alleging claims of

discrimination under Title VII; failing to provide reasonable accommodation or enter into the

interactive process regarding plaintiff's disability and discrimination on the basis of a disability

---

[5] Ms. Daugherty's full deposition transcript does not contain PAGEID numbers.
[6] In a March 31, 2016, email, a USPS human resources employee states that "[s]ince the conditional job offer has already been extended to [plaintiff], in order to not consider him at this point, approval to rescind is being sought." (*Id* at PAGEID 660).

or a perceived disability under the Rehabilitation Act; discrimination for use of leave under the FMLA; and retaliation for various activities under Title VII, the Rehabilitation Act, and the FMLA. Plaintiff has elected to pursue only his disability-related claims, his failure to provide reasonable accommodation or engage in the interactive process claim, and his retaliation claims relative to his termination and non-selection.[7]

## II.    Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, it any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. *See also Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992). The movant may do so by identifying that the non-moving party lacks evidence to support an essential element of its case. *See Barnhart v. Pickrel, Shaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993).

Evidence in the record is viewed in the light most favorable to the nonmoving party, with all reasonable inferences drawn to that party's benefit. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576-77 (6th Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (remaining

---

[7] In his response, plaintiff withdrew the Title VII race discrimination (42 U.S.C. §§ 2000e-2(a) *et seq.*) and Family Medical Leave Act (29 U.S.C. § 2601 *et seq.*) claims alleged in his amended complaint (Doc. 5 at PAGEID 56-57). (*See* Doc. 57 at PAGEID 1796 & n.1).

citations omitted).  Summary judgment is appropriate only where the evidence raises no genuine issues of material fact "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The party opposing a properly supported motion for summary judgment "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986) and Fed. R. Civ. P. 56(e)).  In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial."  *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz.*, 391 U.S. at 288-89).

The function of the reviewing court is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial.  *Anderson*, 477 U.S. at 249.  The court is not required to search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.  The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts."  *See Matsushita*, 475 U.S. at 586.  The party opposing a motion for summary judgment "must make an affirmative showing with proper evidence" to defeat the motion.  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)

(citing *Street*, 886 F.2d at 1479). "Speculation does not create a genuine issue of fact. . . ." *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995).

### III. Analysis

A. <u>Discrimination</u>

The Court begins with plaintiff's discrimination claims related to both adverse employment actions taken by USPS. The Rehabilitation Act, 29 U.S.C. § 791 *et seq*., provides the exclusive remedy for USPS employees asserting disability discrimination claims. *See Verkade v. U.S. Postal Serv.*, 378 F. App'x 567, 577 (6th Cir. 2010) (citing 42 U.S.C. § 12111(5)(B)(i) and *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). "Apart from [§ 504 of the Rehabilitation Act's] limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements [the ADA and the Rehabilitation Act] are precisely the same." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008) (quoting *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146 n.6 (2d Cir. 2002)). *Cf. Bent-Crumbley v. Brennan*, 799 F. App'x 342, 345 (6th Cir. 2020) (under the Rehabilitation Act, a plaintiff must show that "the adverse action was taken *solely* by reason of the disability") (citing *Jones*, 488 F.3d at 403). Thus, claims brought under the Rehabilitation Act and ADA are generally reviewed under the same standards. *Shaikh v. Lincoln Mem. Univ.*, 608 F. App'x 349, 353 (6th Cir. 2015) (citing *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010)). Both statutes set forth "the same remedies, procedures, and rights." *Thompson v. Williamson Cnty., Tenn.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000).

A plaintiff can establish a claim of disability discrimination through either direct or indirect evidence, and the paths are mutually exclusive. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir.

1997)).  The Court evaluates discrimination cases relying on indirect evidence by using the

three-step framework from *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *Spence v.*

*Donahoe*, 515 F. App'x 561, 567 (6th Cir. 2013) (citing *Gribcheck v. Runyon*, 245 F.3d 547, 550

(6th Cir. 2001)).  "First, a plaintiff must set forth a prima facie case of discrimination. . . .  The

burden then shifts to the employer 'to articulate some legitimate, nondiscriminatory reason' for

its actions. . . .  If the defendant carries this burden, the plaintiff must then prove by a

preponderance of the evidence that the reasons offered by the employer were a pretext for

discrimination."  *Gribcheck*, 245 F.3d at 550 (quoting *McDonnell Douglas*, 411 U.S. at 802 and

citing *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  Even with this

burden-shifting framework, "[t]he ultimate burden of persuasion remains at all times with the

plaintiff."  *Id.* (citing *Burdine*, 450 U.S. at 253).

　　　　Under the indirect framework, a plaintiff must show that (1) he is disabled; (2) he is

otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered

an adverse employment action; (4) the employer knew or had reason to know of plaintiff's

disability; and (5) the position remained open while the employer sought other applicants or the

disabled individual was replaced.  *Spence*, 515 F. App'x at 567 (citing *DiCarlo v. Potter*, 358

F.3d 408, 418 (6th Cir. 2004)).  The fifth element of the prima facie case may also be established

with evidence showing that "similarly situated non-protected employees were treated more

favorably."  *Id.* at 567-68 (quoting *Jones*, 488 F.3d at 404).

　　　　If a plaintiff has direct evidence of discrimination, he must still show that he is disabled

and otherwise qualified for the position despite his disability either (1) without accommodation,

(2) with an alleged essential job requirement eliminated, or (3) with a proposed accommodation.

*Mitchell v. U.S. Postal Serv.*, 738 F. App'x 838, 844 (6th Cir. 2018) (citing *Ferrari v. Ford*

*Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016)). The burden then shifts to the defendant to show that either (1) the essential job requirement is essential, or (2) the proposed accommodation will impose an undue hardship on the employer. *Id.* (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)). In the context of the Rehabilitation Act, the Sixth Circuit has characterized direct evidence as follows:

> "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006) (internal quotation marks and citation omitted). "The direct evidence standard essentially requires an admission in some form by the employer that it relied on the disability in making an employment decision." *Coulson v. The Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 855 (6th Cir. 2002) (citation omitted).

*Mitchell*, 738 F. App'x at 844. Direct evidence of discrimination may include "express statements of desires to remove employees." *Brennan*, 799 F. App'x at 345 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). "Direct evidence 'does not require the fact finder to draw any inferences' to conclude 'that the disability was at least a motivating factor.'" *Id.* (quoting *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018)).[8] *Compare id.* at 346 (employer's statement that it was "going to let [plaintiff] go" because she would "cost the Post Office too much money" was "proof" of a "genuine issue of material fact on . . . the existence of direct evidence of disability discrimination"), *and La Ming Chui v. Donahoe*, 580 F. App'x 430, 437 (direct evidence of disability discrimination included "testimony from [plaintiff's] supervisors suggesting that [the decision maker] had a problem with people on limited-duty assignments"), *with Jones*, 488 F.3d at 408-09 (affidavit showing that the

---

[8] Notwithstanding the distinction between the Rehabilitation Act and the ADA—that under the former, a plaintiff must demonstrate that a disability was the *sole* reason for the adverse employment action—recent Sixth Circuit Rehabilitation Act cases continue to employ this direct-evidence definition, which explains that direct evidence shows that disability was a *motivating* factor in an adverse employment decision. *See, e.g., id*; *Clemons as next friend of T.W. v. Shelby Cnty., Bd. of Educ.*, 818 F. App'x 453, 464 (6th Cir. 2020); *Gohl v. Livonia Public Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016).

plaintiff's supervisor said that plaintiff "couldn't do the job . . . wasn't working his job" was not direct evidence of discrimination because it raised two distinct inferences: one that evoked disability (cannot do the job) and one that did not (performance was subpar)), and *Hedrick*, 355 F.3d at 454-55 (statement by employer that expressed concern that plaintiff's medical condition might prevent him from performing a job was isolated, not clearly discriminatory in tone, and therefore did not constitute direct evidence of discrimination).

    *1. Termination*

In its motion for summary judgment, USPS argues that plaintiff lacks direct evidence that his termination was the sole[9] reason for his termination. (Doc. 40 at PAGEID 492-93). Plaintiff's response largely tracks the indirect-evidence framework employed by USPS, but he makes a passing, general reference to direct evidence of discrimination in the context of his termination. (Doc. 57 at PAGEID 1808). The evidence discussed in that portion of the response, however, does not appear to constitute direct evidence. Instead, it is in his later discussion of pretext that plaintiff identifies one example of potential discriminatory animus related to his termination: Supervisor Schmalle's statement that plaintiff would be fired if he reported his disability. (*See* Doc. 57 at PAGEID 1810; Pl.'s Dep., Doc. 36 at PAGEID 249-50; and Smith Dep., Doc. 50 at PAGEID 1334). There is also a genuine issue of material fact as to whether this isolated comment was made by a decision maker related to his termination. *See DiCarlo*, 358 F.3d at 416 ("[A]lthough direct evidence generally cannot be based on isolated and ambiguous remarks . . . when made by an individual with decision-making authority, such remarks become

---

[9] Plaintiff argues that disability discrimination was the sole reason for his termination. He denies the truth or accuracy of his negative performance evaluation (*see* Pl.'s Corrected Resp. to Def.'s Proposed Stmt. of Undisputed Facts, Doc. 58-1 at PAGEID 1872) and points to several pieces of evidence undercutting USPS's poor-performance theory (*see, e.g., id.* at PAGEID 1865).

relevant in determining whether there is enough evidence to establish discrimination.") (citation omitted).

In the instant case, plaintiff presents evidence that Supervisor Schmalle threatened to terminate plaintiff's employment if he reported his injury (*see* Pl.'s Dep., Doc. 36 at PAGEID 249-50); that Supervisor Schmalle was a decision maker (*compare* Schmalle Aff., Doc. 39-10 at PAGEID 424 ("I was not involved with the decision making process."), *with* Baker-Calmeise Aff., Doc. 39-5 at PAGEID 298 (identifying Supervisor Schmalle as a "concurring official" in the termination decision)); and that USPS fired him after he reported to his superiors that he had an injury and needed a reasonable accommodation (*see* Doc. 36 at PAGEID 262-64; Doc. 50 at PAGEID 1335, 1338). The Court finds Supervisor Schmalle's alleged statement that he would be fired if he reported his injury and Station Manager Baker-Calmeise's statement in her affidavit that Supervisor Schmalle concurred in the decision to terminate plaintiff, "if believed, require[] the conclusion that unlawful discrimination was at least a motivating factor in [USPS's] actions." *See DiCarlo*, 358 F.3d at 415 (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). As such, the direct-evidence framework is appropriate for plaintiff's termination-related discrimination claim. Under this framework, plaintiff still must demonstrate that he is disabled and otherwise qualified for the CCA position. *See Mitchell*, 738 F. App'x at 844.

a. *Disability*

Disability under the ADA is defined at 29 C.F.R. § 1630.2(g)(1)(i) as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual[,]" and this definition is incorporated into the Rehabilitation Act at 29 C.F.R. § 1614.203(a)(2). "The threshold issue of whether an impairment 'substantially limits' a major life

12

activity should not demand extensive analysis." *Id.* at § 1630.2(j)(1)(iii).  The term

"substantially limits" must be construed "broadly in favor of expansive coverage," and a "major

life activity" is not necessarily an activity that is centrally important to daily life.  *Id.* at §§

1630.2(i)(1)(i) and (i)(2).  Congress rejected a requirement that an impairment be "permanent or

long-term" to qualify as a substantial limitation.  *Barlia v. MWI Veterinary Supply, Inc.*, 721 F.

App'x 439, 445 (6th Cir. 2018) (quoting from and noting that a stated purpose of the ADA

Amendments Act (ADAAA), Pub. L. No. 110-325, § 2, 122 Stat. 3553 (2008), was to reject any

requirement that an impairment be permanent or long term to qualify as a substantial limitation).

USPS relies on *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002) for its

argument that plaintiff's impairment must be permanent to qualify as a disability.  USPS also

suggests, without authority, that a diagnosis of a condition is required to establish the existence

of a disability.  *Toyota Motor*, however, was expressly overturned with the passage of the

ADAAA.  *See* Pub. L. No. 110-324, § 2 (explaining that its purposes included rejecting standards

enunciated by the *Toyota Motor* Court as related to the definition of disability under the ADA).

Plaintiff has proffered evidence sufficient to create a genuine issue of material fact as to

whether he had an impairment that sufficiently limits a major life activity.  Among other

evidence, plaintiff proffers a U.S. Dept. of Labor Workers' Compensation form signed by an

orthopedic physician on July 15, 2013 (less than one month after his fall), which reflects that

plaintiff's normal work activities were significantly limited.  (Doc. 46-9 at PAGEID 919).  On

June 13, 2014, Dr. E. Gregory Fisher opined that plaintiff had chondromalacia, which likely pre-

existed but was aggravated by his fall and that since the fall, plaintiff's condition had become

chronic and permanent.  (Doc. 47-5 at PAGEID 1063).  A September 4, 2014, letter from Dr.

Marc C. Schneider reflects permanent restrictions due to chondromalacia of the patella and a left

closed fractured lateral malleolus, conditions for which he determined that the onset date was the date of plaintiff's fall.  (Doc. 47-3 at PAGEID 1059; Doc. 47-6 at PAGEID 1065).  The Court finds that this evidence presented by plaintiff creates a genuine issue of material fact as to whether plaintiff has a disability.  USPS cites no authority holding that a formal diagnosis of a medical condition is required to establish a disability—let alone that such a formal diagnosis must predate the adverse employment action.  *Cf. Cady v. Remington Arms Co.*, 665 F. App'x 413, 417 (6th Cir. 2016) ("[Information used to convey knowledge of a plaintiff's disability] *could* include, *among other things*, *a diagnosis*, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions.") (emphasis added) (citing *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 737-38 (6th Cir. 2015)).

Section 1630.2(g)(1) also addresses discrimination based on having a "record of" or being "regarded as" having a disability.  *See* 29 C.R.F. §§ 1630.2(g)(1)(ii)-(iii).  Though plaintiff's arguments center on subsection (i) of the disability definition, he includes the "regarded as" prong of the disability definition in bold in his response.  (*See* Doc. 57 at PAGEID 1798).  To the extent that this emphasis is meant to argue that he was "regarded as" having a disability, the Court finds that plaintiff has not preserved this argument.  To show that a plaintiff is "regarded as" having an impairment, he must show either "(1) that the defendant[] mistakenly believed that [he] had a limiting impairment when in fact [he] did not . . . or (2) that the defendant[] believed [he] had a limiting impairment when that impairment, in fact, was not so limiting. . . ."  *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1106 (6th Cir. 2008).  Here, plaintiff insists that he did (and does) have a limiting impairment and makes no allegation that USPS mistakenly believed that he was impaired.  (*See* First Am. Compl., Doc. 5 at PAGEID 52).  Moreover, the fact that plaintiff does not make any meaningful argument that he meets this

14

part of the disability definition is an independent basis on which to dispose of this issue.  *See McGuire v. McCormick*, No. 17-2295, 2018 WL 5733606, at *1 (6th Cir. June 13, 2018) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005), *abrogated on other grounds as recognized by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1 (6th Cir. 2015)).

### b. *Otherwise qualified*

Arguing that plaintiff cannot establish that he was otherwise qualified for the CCA position, USPS points to the fact that he was terminated during the probationary period for "poor job performance that occurred *prior to* his asserted injury."  (Doc. 40 at PAGEID 496).  In the context of a claim proceeding under an indirect-evidence framework, a court would not consider the employer's alleged nondiscriminatory reason for the adverse employment action at the prima facie stage but instead would examine the plaintiff's prima facie case independent of the reasons offered by the defendant for the adverse employment decision.  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574-75 (6th Cir. 2003).  *See also Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–661 (6th Cir. 2000).  This is because to examine the employer's nondiscriminatory reason at the prima facie stage "would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination."  *Id.* at 574 (citing *Cline*, 206 F.3d at 660-61).

These same concerns may not be at play in the direct-evidence context, where the Court—making all reasonable inferences in plaintiff's favor on summary judgment—concludes that unlawful discrimination has occurred before shifting the burden to the employer to show that the challenged job criterion is essential or that a proposed accommodation would impose an

undue hardship. Regardless, plaintiff has established a genuine issue of material fact as to whether he is otherwise qualified for the CCA position. As a general matter, plaintiff points to the fact that he passed the exam and interview for the CCA position and carried mail before and after his injury. (Doc. 57 at PAGEID 1799). In addition, during his deposition, plaintiff rebutted USPS's characterization of his performance. Plaintiff recalled that he was told that "[he] was doing fine, but [he] needed to pick it up some, get more used to walking and carrying mail." (Doc. 36 at PAGEID 217). Plaintiff also points to Supervisor Smith's deposition testimony, where she allowed that running a little behind on a route is something "that does happen" and that there could sometimes be "issues regarding mail. . . ." (Doc. 50 at PAGEID 1343). Plaintiff also points to the affidavit of Chris Harmon, a letter carrier with USPS and union steward, who investigated plaintiff's termination. (*See* Doc. 46-15 at PAGEID 1044; Doc. 39-12 (identifying Mr. Harmon as a union steward)). Attached to Mr. Harmon's affidavit are his statement and interview notes related to his investigation. (Doc. 46-15 at PAGEID 1046-54). Mr. Harmon expressed the opinion that plaintiff's performance and mistakes were objectively similar to other CCAs that were not terminated. (*See id.* at PAGEID 1044, 1046-48). Finally, plaintiff points to the assessment of Dr. Fisher, who concluded that plaintiff "is capable of performing the dull [sic] duties of a city carrier assistant. . . ." (Doc. 47-5 at PAGEID 1063). Based on this evidence, the Court finds that plaintiff has raised a genuine issue of material fact as to whether he was otherwise qualified as a CCA.

c. *USPS does not meet its burden under the direct-evidence framework*

Because plaintiff has presented direct evidence that his termination was based on unlawful discrimination and has established genuine issues of material fact as to whether he was disabled or otherwise qualified for the CCA position, the burden shifts to USPS to show that

16

either (1) the essential job requirement is essential, or (2) the proposed accommodation will impose an undue hardship on the employer. *Mitchell*, 738 F. App'x at 844. USPS's motion addresses neither proposition. As such, summary judgment in favor of USPS on plaintiff's discriminatory-termination claim is not warranted.

> 2. *Non-selection*

It is not entirely clear whether plaintiff is relying on direct or circumstantial evidence on this claim. Plaintiff makes a passing reference to direct evidence while at the same time cataloging what he refers to as "circumstantial evidence" when discussing his non-selection. (*See* Doc. 57 at PAGEID 1805-1806). Only later, in his discussion of retaliation, does plaintiff identify "animus" related to his non-selection, which may suggest that plaintiff is relying on direct evidence of discrimination. He identifies an email in which Patty Short, with USPS's injury services team, tells Ms. Butts that plaintiff is "playing a game." (Doc. 57 at PAGEID 1812) (citing Doc. 45-1 at PAGEID 627). This email statement, however, does not refer to plaintiff's disability at all, and plaintiff has produced no other evidence relating to this email from which a trier of fact could find discriminatory animus or that USPS acted on that animus. Moreover, in the context of Ms. Short's other email in the chain, the comment also raises an inference of a perceived lack of transparency on plaintiff's behalf as opposed to animus related to his EEO activity:

> [Plaintiff] claims he went through [the Reasonable Accommodation Committee (RAC)] but I can't find anyone who has a note on it. [Plaintiff's] trying to file an EEO to get his job back but I'm finding too many holes in his story. I believe he had someone impersonate a Postal M[anager] and call the [Vocational] Rehab counselor. [Plaintiff] has her totally buffaloed.

(Doc. 45-1 at PAGEID 628). *See Jones*, 488 F.3d at 408-09 (statement creating two distinct inferences does not constitute direct evidence). This email does not constitute direct evidence of disability discrimination related to plaintiff's non-selection for the AMH position.

Plaintiff also points to what he characterizes as "other circumstantial evidence" connecting his disability to his non-selection for the AMH position. (Doc. 57 at PAGEID 1805). Plaintiff describes a series of USPS activities related to plaintiff's injury status with a direction to the Court to "[s]ee agency emails" (with none in particular identified) and alludes to improper, unrecorded discussions between Ms. Daugherty and Station Manager Baker-Calmeise. (*See id.* at PAGEID 1805-06). Plaintiff asserts that this is direct evidence of disability discrimination. (*Id.* at PAGEID 1806).

The cases cited by plaintiff, however, do not support this proposition.[10] Nor has plaintiff directed the Court's attention to the specific evidence ("[s]ee agency emails") as is his burden, *Anderson*, 477 U.S. at 252, and the Court is not obligated to "comb through the record to ascertain whether a genuine issue of material fact exists." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000) (citing *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407, 410 (6th Cir. 1992)). *Cf. Hedberg*, 47 F.3d at 932 ("Speculation does not create a genuine issue of fact. . . ."). The Court discerns no direct evidence of discrimination related to plaintiff's non-selection.

As such, the Court employs the indirect-evidence framework for plaintiff's non-selection-related termination claim. USPS does not contest that plaintiff suffered an adverse employment

---

[10] Plaintiff does not provide an accurate pin citation for the first case, *Wexler*, 317 F.3d 564, but the Court believes plaintiff to cite the portion of the decision discussing the "same actor" inference. This inference provides that if the same individual hired and fired a plaintiff within a relatively short period of time, discrimination was not a determining factor for the firing. *Id.* at 571. This proposition is not relevant to the analysis of direct evidence. The second case cited, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998), discusses the scope of Title VII's coverage for discrimination and that members of the same definable groups are capable of discriminating against their own. This is also not relevant to direct evidence.

action when he was not selected for the AMH position.  In addition, the Court's prior determination on the question of plaintiff's disability status applies with equal force in the context of his non-selection claim.  The Court therefore considers only whether plaintiff is otherwise qualified for the AMH position, whether USPS knew or had reason to know of his disability prior to his non-selection, and whether similarly situated, non-disabled employees were treated more favorably than plaintiff.

a.  *Otherwise qualified*

In its motion for summary judgment, USPS does not squarely address whether plaintiff was otherwise qualified for the AMH position but alludes to the fact that he did not proceed far enough in the hiring process for USPS to consider his qualifications.  Plaintiff argues that he was otherwise qualified, relying primarily on to the fact that USPS conditionally offered him the AMH position.  Plaintiff also points to evidence demonstrating that his restrictions (no lifting more than 75 pounds or climbing) were not clearly inconsistent with the AMH position's physical requirements.  (*See* Occupational Health Services Form,  Doc. 47-3 at PAGEID 1059; AMH position description, Doc. 46-13 at PAGEID 1039-40).  The Court finds that this evidence is sufficient to demonstrate a genuine issue of material fact as to whether plaintiff was otherwise qualified for the AMH position, with or without reasonable accommodation.

b.  *USPS's prior knowledge*

According to USPS, it considered neither plaintiff's disability nor his EEO activity related to his prior termination relative to the AMH position.  Instead, USPS states that its

decision depended on its internal policy against hiring previously-fired employees.  USPS refers to a section of its Employee and Labor Relations Manual as evidence of this policy.[11]

The Court finds that plaintiff has established a genuine issue of material fact on USPS's knowledge of his disability when it decided not to select him for the AMH position.  Plaintiff notes that Station Manager Baker-Calmeise, the stated source of the information used to unwind his conditional offer, was aware of plaintiff's injuries and EEO activity as of August 20, 2013.  (*See* Doc. 45-1 at PAGEID 528, 539-42).  Ms. Daugherty, who spoke with Station Manager Baker-Calmeise in relation to plaintiff's consideration for the AMH position, was independently aware of plaintiff's injury claim and termination-related grievance as of October 2013 (*see id.* at PAGEID 570)—well before his non-selection was first communicated on December 27, 2015, and finalized sometime after March 31, 2016.  Plaintiff also identifies a December 22, 2015, email sent to Ms. Butts, the field recruiter who notified plaintiff of his non-selection, in which plaintiff was listed as an applicant pending medical review.  (*See id.* at PAGEID 614-15).  Five days later, Ms. Butts notified plaintiff of his non-selection for the AMH position.

Plaintiff also argues that he discussed his disability with Ms. Butts prior to submitting his AMH application.  (*See* Doc. 58-2 at PAGEID 1881, 1897) (citing Pl.'s Aff., Doc. 46-12, and Pl.'s Dep., Doc. 36).  Only his EEO affidavit, however, supports this contention.  (*See* Doc. 46-12 at PAGEID 958) ("I advised . . . Lisa Butts and the other individuals *who interviewed me* [of my medical condition/impairment].") (emphasis added).  The cited portion of plaintiff's deposition is unrelated; in it, he discusses his delivery routes as a CCA.  (*See* Doc. 36 at PAGEID 238-40).  Elsewhere in his deposition, plaintiff mentions Ms. Butts only once and in

---

[11] The actual document attached to USPS's motion does not correspond to the manual section cited.  (*Compare* Doc. 40-1 at PAGEID 514, *with* Doc. 39-21 at PAGEID 471-73).   Because plaintiff admits to the existence of the policy, however, this error is harmless.  (*See* Doc. 58-2 at PAGEID 1886).

passing—referring to her as "the lady . . . I think she worked in the human resource office.  She makes decisions on hiring."  (*Id.* at PAGEID 205).  In her own deposition, Ms. Butts admits only that she "may have" told plaintiff during this discussion that a "medical condition or disability would not necessarily disqualify him from the position" and insists that she "didn't discuss nor [does she] discuss medical with anyone."  (Doc. 49 at PAGEID 1167-68).[12]

Plaintiff then asserts that in the December 27, 2015, call with Ms. Butts, she informed him that he was not selected for the position "*based on* statements from his prior manager and/or supervisors, including information about EEO and disability."  (Doc. 58-2 at PAGEID 1898) (emphasis added).  Plaintiff proffers his own EEO affidavit and Ms. Butts's deposition testimony in support of this assertion.  The relevant portion of plaintiff's affidavit reads: "[My previous /current EEO activity] is still pending before the EEOC.  That matter was referenced in my personnel file from the Westwood Branch.  Lisa Butts mentioned it when she contacted me and told me I did not get the job."  (Doc. 46-12 at PAGEID 958).  Plaintiff's characterization of this evidence (that his non-selection was "based on" his prior EEO activity and disability) is stronger than the actual statement in his affidavit.  Plaintiff averred only that Ms. Butts *mentioned* his prior EEO activity in this conversation, which is not direct evidence of discrimination.  In addition, the portion of Ms. Butts's deposition cited to support this contention is not at all related to USPS's knowledge.  It reads: "Q. Did you talk to him on the phone or in person about [plaintiff's non-selection]?  A. Yes.  Q. When was that?"  (Doc. 49 at PAGEID 1164, 52:4-7).  The more relevant testimony on the subject is as follows: "Q. At [the point at which Ms. Butts

---

[12] Plaintiff also argues that he told his interviewer for the AMH position (Ms. Barnes) that he had a disability.  (See Doc. 58-2 at PAGEID 1882, 1897).  Plaintiff cites only Ms. Barnes's affidavit for this position; but in it, she denies any such knowledge.  (See Doc. 46-12 at PAGEID 1015) ("[Q.] Are you aware of whether or not [plaintiff] suffers from any medical conditions or impairments . . . .?  [A.] No.").  Moreover, her affidavit is consistent with her deposition testimony on the subject: "Q. Did [plaintiff] describe to you that he had an injury at work?  A. No." (Barnes Dep., Doc. 52 at PAGEID 1520).  The Court therefore finds no sworn statement to support this representation.

informed plaintiff of his non-selection] had [Mr. Reynolds and Mr. Caproni] -- was it known at that point that [plaintiff] had a physical disability?  A. I do not know what they – they never mentioned that to me."  (*Id.* at PAGEID 1165).  Therefore, this evidence does not support plaintiff's contention that USPS had knowledge of his disability when it decided not to select him for the AMH position.[13]

Although the other circumstantial evidence cited by plaintiff does not support his contention, plaintiff's EEO affidavit is sufficient to create a genuine issue of material fact as to whether USPS had knowledge of his disability when it did not select him for the AMH position.

c.  *Comparative analysis*

Plaintiff's discrimination claim related to his non-selection falters on the final element of the prima facie case.  Plaintiff points to no evidence regarding his replacement, whether the position remained open, or whether similarly situated (having had a prior termination from USPS) but non-disabled employees were treated more favorably.  Plaintiff instead relies on evidence showing that it was not unprecedented for former USPS employees to be re-hired following a for-cause termination, arguably showing that his treatment may have been worse than others.  (*See* Daugherty Dep., Doc. 56, 15:21-16:2; Barnes Dep., Doc. 52 at PAGEID 1545-46; Butts Dep., Doc. 49 at PAGEID 1199).  But this evidence does not create a genuine issue of fact as to whether particular employee-comparators "were similar in all relevant respects," such as having "engaged in acts of comparable seriousness" prior to termination.  *See Bobo*, 665 F.3d at 751 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) and

---

[13] Plaintiff points to other circumstantial evidence that he argues supports his position that USPS knew about his disability when it did not select him for the AMH position, including the unreliability of testimony provided by Ms. Butts, field recruiter; Mr. Reynolds, Operations Support Specialist; and Mr. Caproni, Plant Manager.  (See, e.g., Doc. 57 at PAGEID 1812, Doc. 58-1 at PAGEID 1887-88).  The Court finds that a detailed discussion of this evidence is unnecessary given that the evidence discussed above is sufficient to generate a genuine issue of material fact as to whether USPS had knowledge of his disability before it decided not to select him for the AMH position.

*Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)).  Plaintiff also points to "circumstantial evidence that creates the causal connection between the non-hire of [p]laintiff in December 2015 and his disability."  (Doc. 57 at PAGEID 1805).  But the final element of the prima facie case requires a showing that similarly situated, non-disabled employees were treated more favorably, such that an inference of discrimination arises.  *See Spence*, 515 F. App'x at 568.  Plaintiff's evidence does not create a genuine issue of material fact on the final element of the prima facie discrimination case as it relates to plaintiff's non-selection.  Therefore, USPS's motion for summary judgment should be granted on plaintiff's claim that USPS discriminated against him on the basis of a disability when it did not select him for the AMH position.

B.  Failure to accommodate

In response to USPS's motion for summary judgment, plaintiff seems to allege failure to accommodate claims related to both his termination and his non-selection.  As related to his non-selection, however, plaintiff has presented no evidence that he requested, formally or otherwise, that USPS accommodate his alleged disability.  The Court therefore analyzes plaintiff's failure to accommodate claim only as it relates to his termination and not his non-selection.

In the ADA context, failure to accommodate claims are analyzed using the direct-evidence framework.  *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) ("[F]ailing to make a reasonable accommodation falls within the ADA's definition of 'discrimination.'  Accordingly, claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination.") (internal footnote and citation omitted).  But this understanding has not carried over to the Rehabilitation Act context.  *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416-417 (6th Cir. 2020) ("As Nissan points out, we have occasionally—though generally in unpublished

cases—analyzed a failure-to-accommodate claim under the indirect test. . . . These cases do not . . . distinguish *Kleiber* and its progeny. . . . [The ADA and the Rehabilitation Act] are not identical.").  USPS does not refer to either framework in its motion for summary judgment but insists that plaintiff "simply never requested an accommodation and thus his claim to have been denied an interactive process fails as a matter of law." (Doc. 40 at PAGEID # 495).[14]

When it comes to accommodation requests in the Sixth Circuit, "[t]he employee is not required to use magic words such as 'accommodation' and 'disability'; rather, we ask whether 'a factfinder could infer that [the interaction] constituted a request for an accommodation.'" *Fisher*, 951 F.3d at 419 (quoting *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004)). *See also White v. Honda of Am. Mfg., Inc.*, 191 F. Supp. 2d 933, 950 (S.D. Ohio 2002) ("The ADA does not require that any talismanic language be used in a request for reasonable accommodation.") (citations omitted).  Here, plaintiff testified:

> Q. Did you ask for any accommodation from Elmer Schmalle or Katrina Baker?
> A. I did. I asked --
> Q. Or Neal [Gilday]?
> A. Yeah. I asked all three.  Katrina --
> Q. What did you ask?
> A. I asked for an easier route to accommodate my, you know, my knees, my injury, and Neal [Gilday] told me he could see what he could do, but he's given me what he has.
> Q. So, did he give you accommodation?
> A. No.
> Q. All right. What about Mr. Schmalle, did he give you accommodation?
> A. What he thought he was giving me.
> Q. Did he give you accommodation?
> A. No.
>
> . . .
>
> Q. Did he change your route as you requested so you could perform it?
> A. He changed my route as I requested, but it was still a difficult route.

---

[14] In its Proposed Undisputed Facts, USPS cites to plaintiff's affidavit for the proposition that plaintiff did not request an accommodation until after his termination.  (Doc. 40-1 at PAGEID 512, citing Doc. 39-7 at PAGEID 410).  There is nothing in plaintiff's affidavit at PAGEID 410 to support this proposition.

Q. Meaning what?
A. Meaning that it was still a hill and steps.
Q. Did you tell him that that was the hard part for you?
A. I did.
Q. And what did he do?
A. He told me stick it out. Think about your 90 days.
Q. And what did you understand him to mean by think about your 90 days?
A. I took it as he was telling me he was recognizing my effort and that just keep pushing and I'd see the light towards the end.

. . .

Q. Did he say there was going to be any consequences regarding your job?
A. Yes, he did.
Q. What did he say?
A. He said that I would be recognized through my efforts, and he told me just think about the 90 days and just keep pushing or, you know, basically, I wouldn't be recognized for my efforts, even though I had injuries and he knew of my disabilities. He just told me keep pushing. He didn't accommodate me, really.
Q. Did anybody refer you to the reasonable accommodation committee?
A. No.
Q. So, did Ms. Baker --
A. No.
Q. -- send you over there?
A. No.
Q. Did Mr. Schmalle send you over there?
A. No.
Q. Did Mr. -- well, did Neal [Gilday] send you over there?
A. Me and Neal [Gilday] never talked at all on that. He just knew that I was injured during my route.
Q. Did any other manager or supervisor either send you to reasonable accommodation committee, give you a claim form, a form to request reasonable accommodation or tell you about the procedure one way or another?
A. I never knew about it and I never was given the paper.

(Doc. 36 at PAGEID 262-64). Supervisor Smith also acknowledged in her deposition that

plaintiff "told [her] about a knee injury" and "was hurting" after his fall. (Doc. 50 at PAGEID

1335, 1338).

The Court finds that this testimony is direct evidence of USPS's failure to accommodate

plaintiff in the CCA position. If believed, and without further inference, it establishes that

plaintiff requested an accommodation that was not given.  *See DiCarlo*, 358 F.3d at 415.  The

Court therefore finds that the direct evidence approach is appropriate for plaintiff's failure to

accommodate claim.[15]  Under this approach,

> (1) [t]he plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Kleiber*, 485 F.3d at 869 (quoting *Hedrick*, 355 F.3d at 452).  Put differently, under the direct-

evidence framework, "once a[] . . . plaintiff establishes that an employer failed to accommodate a

known disability," the burden shifts to the employer to show that a proposed accommodation

presents an undue hardship to the employer.  *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834,

839 (6th Cir. 2018).

For the reasons discussed with respect to his discrimination claims, plaintiff has provided

sufficient evidence that he is disabled and qualified for the CCA position.  The Court therefore

finds that plaintiff has met his burden under the direct evidence test.  Because USPS offers no

argument on whether the accommodated job criterion was essential or the requested

accommodation imposed an undue hardship, summary judgment should be denied on plaintiff's

failure to accommodate claim.

---

[15] The analyses under the circumstantial- and direct-evidence approaches are similar in this context.  *See Cheatham v. Brennan*, No. 1:18-cv-295, 2020 WL 5517245, at *2 (S.D. Ohio Sept. 14, 2020) ("[U]nder either test, Plaintiff bears the initial burden of establishing that an employer failed to accommodate a known disability.") (footnote omitted).

Related to the failure to accommodate claim, "[o]nce an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Fisher*, 951 F.3d at 421 (quoting *Hostettler*, 895 F.3d at 857). Through this process, the parties are to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)). Both the employer and employee "have a duty to participate in good faith." *Id.* at 871 (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), *judgment vacated on other grounds*, 535 U.S. 391 (2002)). If the Court determines that the interactive process was triggered, it "should attempt to isolate the cause of the breakdown and then assign responsibility." *Id.* (quoting *Bultemeyer v. Fort Wayne Cnty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996)). Failing to engage in the interactive process is not an independent cause of action and arises only "if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014). *See also Thompson v. Fresh Prods., LLC*, No. 20-3060, 2021 WL 139685, at *10 (Jan. 15, 2021) ("[Failure to engage in the interactive process] is a violation of the ADA only if plaintiff establishes a prima facie case of failure to accommodate.") (citation omitted). Because plaintiff has established the prima facie case for his failure to accommodate claim, the trier of fact should also consider whether USPS failed to engage in the interactive process.

C. Retaliation

Plaintiff argues that USPS retaliated against him in connection with both adverse employment actions. To establish a retaliation claim under the Rehabilitation Act, plaintiff must demonstrate that "1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action

adverse to the plaintiff; and 4) the protected activity and the adverse employment action are causally connected." *Gribcheck*, 245 F.3d at 550 (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)). For the fourth prong, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen*, 229 F.3d at 563 (citation omitted).

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims under the Rehabilitation Act based on circumstantial evidence. *Gribcheck*, 245 F.3d at 550. Plaintiff's prima facie burden on a retaliation claim is a "low hurdle[,]" *id.* at 551 (citation omitted), and the success of plaintiff's retaliation claim does not depend on the success of the underlying disability discrimination claim. *See Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007).

USPS contends that there is "no direct evidence from which the Court or a jury could draw a causal connection between USPS's employment actions and the asserted protected activity." (Doc. 40 at PAGEID 504). In response, plaintiff cites a circumstantial framework for establishing a prima facie case for retaliation (Doc. 57 at PAGEID 1811) (citing *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997)) and does not otherwise clearly identify direct evidence upon which he would rely for his retaliation claims. Plaintiff's testimony regarding Supervisor Schmalle's statements after plaintiff's allegedly requested an accommodation are not clearly discriminatory in tone. (*See* Doc. 36 at PAGEID 263-64). *See Hedrick*, 355 F.3d at 454-55.[16] As noted in the discussion of plaintiff's direct evidence regarding his non-selection-related discrimination claim, the only potential piece of direct evidence cited by plaintiff is an email from a USPS employee, Ms. Short, stating that plaintiff was "playing a game" as it related to his

---

[16] Plaintiff does not explicitly raise this testimony as direct evidence of retaliatory termination. *See McGuire*, No. 17-2295, 2018 WL 5733606 at *1 (undeveloped arguments are deemed waived). Even if this testimony or other evidence did constitute direct evidence of termination-related retaliation, the Court concludes that this claim survives summary judgment under the indirect framework as discussed *infra*.

EEO activity.[17]  As discussed above, this email does not compel the conclusion that USPS retaliated against plaintiff for his EEO activity.  (*See supra* pp. 17-18).  Moreover, there is no allegation that Ms. Short was a decision maker.  The Court therefore applies the burden-shifting framework to plaintiff's retaliation claims.

>    1.  *Retaliatory termination*

Plaintiff argues that USPS retaliated against him for both (1) his request for accommodation by notifying him of his termination on July 9, 2013 and (2) for his 2013 EEO activity by later formally terminating him in April 2014.  *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) (a request for accommodation is a protected activity).  USPS does not dispute that a request for an accommodation and EEO activity are protected activities and acknowledges that plaintiff's termination and non-selection were adverse employment actions.  As discussed above, plaintiff has introduced evidence that USPS had knowledge of (1) his request for an accommodation prior to being notified of his termination and (2) his 2013 EEO activity prior to his formal separation from USPS in April 2014.  (*See supra* pp. 19-20, 24-25).  Therefore, only the fourth element of the termination-related retaliation claim—causation—is at issue.

Plaintiff's June 9, 2013, notice of termination followed just days after his alleged request for an accommodation.  But temporal proximity alone is generally insufficient to establish a causal relationship.  *Nguyen*, 229 F.3d at 566 (noting that it had previously "rejected the proposition that temporal proximity is enough" to demonstrate a causal relationship and finding that the facts at bar did not warrant a departure from that understanding).  In addition to temporal proximity, plaintiff has proffered Supervisor Schmalle's statement that reporting plaintiff's

---

[17] For the reasons discussed *supra* at p. 21, plaintiff's affidavit also does not present direct evidence of retaliatory non-selection for plaintiff's EEO activity.

injury would lead to his termination (*see* Pl.'s Dep., Doc. 36 at PAGEID 249-50; Smith Dep., Doc. 50 at PAGEID 1334) and Mr. Harmon's affidavit describing his impression that other mail carriers were treated more favorably than plaintiff notwithstanding similar mail-carrying times and errors (*see* Doc. 46-15 at PAGEID 1044).  Finally, plaintiff points to USPS's Employee and Labor Relations Manual, which states that "a request for accommodation must be referred to the [RAC] when an employee has requested an accommodation or modification . . . and when one or more of the following is true: . . . [y]ou do not believe the employee is a qualified person with a disability." (Doc. 48-1 at PAGEID 1082).  Although this employee manual section would appear to encompass plaintiff's circumstances in mid-2013, internal USPS email correspondence indicates that USPS did not broach the subject of a RAC referral until December 31, 2015.  (Doc. 45-1 at PAGEID 616).  The Court finds that this evidence satisfies plaintiff's light prima facie burden on causation.  *See Gribcheck*, 245 F.3d at 551.

USPS argues that plaintiff's poor performance was the legitimate, nondiscriminatory reason for his termination.  The Court therefore turns to the pretext analysis.  A plaintiff claiming retaliation is required to show by a preponderance of the evidence that: (1) the proffered reason had no basis in fact, (2) the reason did not actually motivate the plaintiff's discharge, or (3) the reason was insufficient to motivate discharge.  *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (citation omitted), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).  "To carry [his] burden in opposing summary judgment, [plaintiff] must produce sufficient evidence from which a jury could reasonably reject [USPS's] explanation of why it fired [him]."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (race discrimination context) (citing *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th

Cir. 2008)).  Plaintiff does not address these categories at all, and USPS addresses them in a cursory fashion.

As to the first category, there is considerable evidence that poor performance drove USPS's termination decision, including the fact that a performance review *prior to the fall and his resulting disability* reflected unsatisfactory ratings in half of USPS's rated performance categories.  (*See* Doc. 39-4).  Plaintiff has not provided evidence demonstrating that the reason for his termination had no basis in fact and this category therefore does not shed light on the pretext analysis.

The third category is "easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff."  *Manzer*, 29 F.3d at 1084.  Plaintiff's evidence about the delivery times of other mail carriers, provided in Mr. Harmon's affidavit and discussed with respect to plaintiff's discrimination claim, is not sufficiently specific to carry his burden to show pretext via this category.  Mr. Harmon's statement refers to other CCAs generally and does not identify particular comparators.  While *Bobo* emphasized that the inquiry regarding comparator status is not inflexible, a plaintiff is still required to show that comparators are "similar in all relevant respects. . . ."  *See Bobo*, 665 F.3d at 751 (citation omitted).  *See also Goldblum*, 2020 WL 4346548, at *3 (quoting *Miles*, 946 F.3d at 893 ("[T]he pretext stage . . . requires 'substantially identical conduct' [between a plaintiff and comparators.]")).  The Court therefore concludes that the third category is similarly unavailing to plaintiff.

This leaves the second category, in which a plaintiff effectively admits the factual basis and theoretical legitimacy of an employer's proposed explanation for the adverse action but

offers circumstantial evidence that it was more likely than not a pretext for unlawful retaliation. *See Manzer*, 29 F.3d at 1084.  In the retaliation context, the same evidence that supports the prima facie case for retaliation may also support this pretext category because evidence demonstrating the causal-connection element of the prima facie retaliation case overlaps with evidence rebutting a proffered, legitimate reason for the adverse employment action.  *Compare Cantrell v. Nissan N. America Inc.*, 145 F. App'x 99, 107 & n.2 (6th Cir. 2005) ("The overlap between [retaliation's] causal connection requirement and a showing that the proffered reason for termination was not the actual reason is implicitly recognized in our case law, which permits both to be proven by the same type of evidence.") (citations omitted), *with Manzer*, 29 F.3d at 1084 (In the age discrimination context, "[t]he plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of age discrimination.").  *Cf. Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 795 n.7 (6th Cir. 2006) (In the context of FMLA retaliation, "where a plaintiff's prima facie case is sufficiently strong to allow a reasonable jury to find that the defendant's proffered reason for termination is not the actual reason for termination, then the prima facie case suffices to create a genuine issue of material fact [on pretext].").  The Court must therefore determine whether plaintiff has adduced sufficiently strong evidence of a causal connection such that a trier of fact could reasonably conclude that it was more likely plaintiff's protected activity than his poor performance that led to his termination.

USPS has adduced evidence that plaintiff was not a satisfactory CCA in the form of plaintiff's performance reviews and the statements of his supervisors.  The Court finds that plaintiff's proffered circumstantial evidence, however, has the "sheer weight" necessary to allow a trier of fact to reasonably conclude that USPS's explanation was a cover for unlawful

retaliation. *See Manzer*, 29 F.3d at 1084. USPS notified plaintiff of his termination just days after his request for accommodation. There is evidence that Supervisor Schmalle was at least arguably a decision maker[18] and warned plaintiff that if he reported his injury to "Workman's Comp or anyone" he would be fired. (Pl.'s Dep., Doc. 36 at PAGEID 249-50). (*See also* Smith Dep., Doc. 50 at PAGEID 1334). This raises an inference that USPS was predisposed to terminating employees dealing with a disability (e.g., needing an accommodation). Mr. Harmon averred that "[plaintiff] was treated worse than all other CCA[]s who had similar deficiencies in performance, including missed deliveries and slower than expected deliver times." (Doc. 46-15 at PAGEID 1044). While non-specific, this affidavit casts reasonable doubt on USPS's poor-performance explanation and plausibly suggests that other motivations could have been at play. Finally, the failure to refer plaintiff to the RAC, notwithstanding the fact that USPS's employment manual would appear to require it in this context, could lead a reasonable fact finder to infer that USPS terminated plaintiff to avoid the administrative process associated with his request for accommodation. Cumulatively, this evidence demonstrates a genuine issue of material fact as to whether USPS's legitimate, non-discriminatory reason for his termination was pretextual. Summary judgment should be denied on plaintiff's retaliatory-termination claim.

   *2. Non-selection*

USPS argues that plaintiff has failed to establish evidence of a causal connection between his protected activities and non-selection for the AMH position necessary to make out the prima facie retaliation case. Rather than discussing causal connection, however, USPS emphasizes its asserted lack of knowledge of plaintiff's EEO activity.[19] Specifically, USPS argues that plaintiff

---

[18] As stated *supra*, there is an issue of fact as to whether Supervisor Schmalle was a decision maker. *See* pp. 11-12.
[19] It is not clear that USPS acknowledges the possibility of retaliation related to plaintiff's 2013 *and* 2016 EEO activity. (*See* Doc. 40 at PAGEID 504). Plaintiff, by contrast, clearly asserts retaliation related to both his 2013 and 2016 EEO activity. (*See* Doc. 58-2 at PAGEID 1901).

has no evidence, aside from his own, self-serving testimony, that USPS management had access to his medical or EEO records prior to deciding not to select him for the AMH position.  USPS asserts that "[a]ll USPS responsible management officials tasked with reviewing [p]laintiff's application for reemployment deny knowledge of [p]laintiff's prior EEO complaints."  (Doc. 40 at PAGEID 504).  It maintains that it decided not to select plaintiff on the basis of "its stated policy of not hiring terminated employees."  (*Id.*).

Plaintiff has come forward with evidence, however, to support a reasonable inference that USPS knew of plaintiff's prior EEO activity when it decided not to hire him for the AMH position.  Station Manager Baker-Calmeise knew of plaintiff's 2013 EEO activity (*see* Doc. 45-1 at PAGEID 528, 539-42) and spoke with Ms. Daugherty in connection with the AMH position (*see* Daugherty Dep., Doc. 56 at 13:22-15:2).  Ms. Daugherty was also independently aware of plaintiff's 2013 injury claim and termination-related grievance as of October 2013.  (*See* Doc. 45-1 at PAGEID 570).  Ms. Butts was aware of plaintiff's 2016 EEO activity in February 2016. (*See id.* at PAGEID 624).  Making all reasonable inferences on plaintiff's behalf, a trier of fact could reasonably conclude that decision makers with regard to the AMH position either (1) had knowledge of his 2013 EEO activity prior to the December 27, 2015, notification of his non-selection for the AMH position or (2) had knowledge of both his 2013 and 2016 EEO activity prior to the formal rescission of his conditional offer sometime after March 31, 2016.  Therefore, plaintiff's evidence creates a genuine issue of fact on whether USPS had knowledge of plaintiff's EEO activity before it made its adverse employment decision.

On the causal connection element of his prima facie case, plaintiff points to his recollection of how he was notified of his non-selection.  In his EEO affidavit, plaintiff states that Ms. Butts referenced his EEO activity when she told him he was not selected for the AMH

position. (Doc. 46-12 at PAGEID 958).[20] This is circumstantial evidence that his EEO activity was causally related to his non-selection position for the AMH position.[21]

Plaintiff also offers several circumstantial-evidence-based theories of the causal connection between his EEO activity and non-selection. Plaintiff argues that Ms. Barnes had effectively hired him for the AMH position until Station Manager Baker-Calmeise, equipped with the knowledge of his EEO activity, spoke with Ms. Daugherty—initiating the series of internal USPS communications culminating in his non-selection. Plaintiff asserts that it was only "after the personal phone conversation from Baker-Calmeise that the decision was changed." (Doc. 57 at PAGEID 1812). This argument assumes, however, that Ms. Barnes's original recommendation for hire equates to a "decision." Instead, however, the record reflects that the interview with Ms. Barnes led only to a conditional offer that was subject to further review and that plaintiff was aware of the conditional nature of the offer. (*See* Doc. 39-20; Barnes Aff., Doc. 46-12 at PAGEID 1017). Plaintiff also relies on what he refers to as "innuendo" between Ms. Daugherty and Station Manager Baker-Calmeise during their conversation about plaintiff, which led to the alleged change in Ms. Barnes's "decision" on the AMH position. (*See* Doc. 58-2 at PAGEID 1904). But while the conversation between Ms. Daugherty and Station Manager Baker-Calmeise could reasonably be deemed circumstantial evidence of USPS's *knowledge* of plaintiff's prior EEO activity in connection with the non-selection decision, vague charges of

---

[20] Plaintiff's response brief characterizes plaintiff's statement in such a way as might be read to constitute direct evidence of retaliatory non-selection. Plaintiff's actual statement in his affidavit, however, is not. *See supra* p. 21.
[21] Plaintiff makes a related argument that Ms. Butts's version of this conversation, denying any reference to plaintiff's EEO activity as the reason for his non-selection, is not true. He argues that alleged shifts in her narrative on the subject represent circumstantial evidence that she intended to cover up the real reason for his non-selection. The Court has reviewed Ms. Butts's sworn statements on the subject, however, and is not persuaded that they are so inconsistent as to be circumstantial evidence of causation. (*See* Doc. 45-1 at PAGEID 627, 668; Doc. 39-19 at PAGEID 461; Doc. 49 at PAGEID 1183).

"innuendo" do not support a reasonable inference of causation.  *See Hedberg*, 47 F.3d at 932
("Speculation does not create a genuine issue of fact. . . .").

Plaintiff also characterizes Mr. Daugherty's testimony as "speculative," "flawed," and
"biased" with respect to the reason that plaintiff was not selected for the AMH position.  (*See*
Doc. 58-2 at PAGEID 1888).  In support of this position, however, plaintiff points to the fact that
Ms. Daugherty was admittedly uncertain as to exactly how she relayed the takeaways from her
two-year-old conversation with Station Manager Baker-Calmeise and the fact that she did not
make a formal record of their conversation.  Having identified no apparent inconsistency in her
testimony, however, the Court does not agree that it represents circumstantial evidence of
causation.

Plaintiff then points to a series of internal USPS emails sent in the days and months
following plaintiff's notice of his non-selection and prior to when his conditional offer of the
AMH position was formally rescinded after March 31, 2016.  (*See* Doc. 45-1 at PAGEID 617,
625-28, 637, 643-45, 660).  In them, USPS personnel investigate plaintiff's history, his
injury/compensation status, and identify him as a potential RAC referral candidate.  Plaintiff
argues that this investigation and failure to engage in the RAC process constitute circumstantial
evidence that his prior EEO activity caused his non-selection.  Construing these emails and
timeline in plaintiff's favor, they could reasonably be considered circumstantial evidence that
elements of his history (e.g., his EEO activity) led to the rescission of his conditional offer for
the AMH position.

In sum, the Court finds that plaintiff's sworn statement that Ms. Butts mentioned his EEO
activity during the conversation in which she notified him of his non-selection and the internal
USPS emails demonstrating an investigation into his history prior to the formal rescission of his

conditional offer are sufficient to meet plaintiff's light prima facie burden for his non-selection-related retaliation claim.  *See Gribcheck*, 245 F.3d at 551.

As its legitimate, nondiscriminatory reason for its non-selection decision, USPS relies on its internal policy against rehiring previously-fired employees.  The Court therefore moves to the three-pronged pretext analysis.  As noted above, the parties agree on the existence of this USPS policy and agree that plaintiff was previously fired by USPS, eliminating any argument USPS's proffered reason is not based in fact for purposes of the first prong.  For purposes of the third prong, plaintiff has not adduced evidence that USPS's proffered reason for his non-selection was insufficient to motivate non-hire because he has offered no evidence on how any *particular* employee with a prior termination was treated differently.  *See Goldblum*, 2020 WL 4346548, at *3 (quoting *Miles*, 946 F.3d at 893 ("[T]he pretext stage . . . requires 'substantially identical conduct' [between a plaintiff and comparators.]")).  As a result, plaintiff must meet the second prong with the "sheer weight" of his circumstantial evidence—demonstrating that it was more likely than not his protected activity that motivated his non-selection.  *See Manzer*, 29 F.3d at 1084.

In addition to the evidence offered in support of his prima facie retaliation case, *see Cantrell*, 145 F. App'x at 107 & n.2, plaintiff points to testimony from Ms. Daugherty, Ms. Barnes, and Ms. Butts that the relied-upon, legitimate, nondiscriminatory policy was not uniformly enforced.  Ms. Daugherty testified: "Q. Is it true that an individual is not eligible for rehire if they're terminated for cause?  A. Every case is different.  It's most likely a reason to disqualify a candidate but it also depends on the circumstances of the termination."  (Doc. 56, 15:21-16:2).  (*See* also Doc. 52 at PAGEID 1545-46 (Ms. Barnes testifying that she was aware that USPS employees were sometimes asked to resign in lieu of being terminated in the event of

medical or performance issues); Doc. 49 at PAGEID 1199 (Ms. Butts testifying that there are procedures in place for hiring a previously-fired USPS employee)).  These three employees acknowledge that USPS's relied-upon policy was not uniformly enforced, which is circumstantial evidence that the policy did not actually motivate plaintiff's non-selection.

Therefore, in all, plaintiff has proffered testimony regarding the uneven application of USPS's policy against hiring previously-fired employees, his statement in his affidavit that Ms. Butts referenced his EEO activity when she notified him that he would not be selected for the AMH position, and a series of internal USPS emails suggesting that it was aware of his disability and EEO activity prior to formally rescinding his conditional offer for the AMH position.  The Court finds that this constitutes sufficient evidence of pretext to withstand summary judgment on his non-selection-related retaliation claim.  *Cf. Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART, 2016 WL 7234757, at *1 (E.D. Ky. Dec. 13, 2016) ("In summary judgment, ties go to the plaintiff. . . .  Because civil litigants have a right to a jury trial.") (citation omitted).

## IT IS THEREFORE RECOMMENDED THAT:

1. Summary judgment be **DENIED** as to plaintiff's discrimination claim related to his termination from the CCA position and **GRANTED** as to his discrimination claim related to his non-selection for the AMH position;

2. Summary judgment be **DENIED** as to plaintiff's failure to accommodate claim; and

3. Summary judgment be **DENIED** as to plaintiff's termination-related and non-selection-related retaliation claims.

Date:   2/3/2021

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GARY X. DORSEY, SR.,                                                     Case No. 1:18-cv-615
        Plaintiff,                                                     Cole, J.
                                                           Litkovitz, M.J.

                 vs.

MEGAN J. BRENNAN, POSTMASTER
GENERAL, U.S. POSTAL SERVICE,
        Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).